# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:20-cv-00340-GCM

| | |
|---|---|
| KEITH HARDING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| MICHAEL MOODY, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, [Doc. 39], and Plaintiff's Motion for Arbitration and Award, [Doc. 44].

## I.   PROCEDURAL BACKGROUND

Pro se Plaintiff Keith Harding ("Plaintiff") is a North Carolina inmate currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. Plaintiff filed this action through a verified Complaint on November 24, 2020, pursuant to 42 U.S.C. § 1983, naming FNU Schetter, identified as an employee of Marion Correctional Institution ("Marion"), and Michael Moody, identified as an employee of and nurse at Marion, as Defendants in this matter. [Doc. 1]. Plaintiff's Complaint survived initial review on his Eighth Amendment excessive force and deliberate indifference to Plaintiff's serious medical need claims against Defendants Schetter and Moody, respectively. [Doc. 9]. Plaintiff's remaining claims were dismissed. [Id.]. Defendant Schetter, however, was dismissed as a Defendant in this matter for Plaintiff's failure to timely effect service on him and to good cause for such failure. [Docs. 22, 23]. The case proceeded against Defendant Moody only.

Plaintiff filed several improper discovery requests in this matter, which were stricken

from the record, and Plaintiff was repeatedly admonished that discovery requests should be served on the opposing party only, not with this Court. [Doc. 28, 38; see Docs. 27, 29-32, 34, 36-37]. Other than Plaintiff's motion to require Defendant to depose the Plaintiff, which was denied, [Docs. 33, 38], neither party has filed any motions to compel discovery in this matter.

Defendant Moody moved for summary judgment. [Doc. 39]. In support of his motion, he submitted a memorandum, his own affidavit, Plaintiff's Offender Information Sheet, Plaintiff's relevant medical record, and Plaintiff's prison infraction record. [Docs. 40, 40-1 through 40-3].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 41]. Plaintiff timely responded to Defendant's summary judgment motion. [Docs. 42, 42-1]. He submitted his own affidavit, the Incident Report from a use of force incident that preceded the medical care at issue, and his own medical records. [Id.]. Thereafter, Defendant filed a notice of intent not to reply to Plaintiff's response. [Doc. 43]. Plaintiff since filed a motion for arbitration and award in which Plaintiff seeks directed verdict, final disposition of this matter by an arbitrator, and $25,000.00 in relief. [Doc. 44]. Plaintiff apparently misconstrues Defendant's decision not to file a reply as a failure to dispute Plaintiff's evidence and "to satisfy Summary Judgment." [See id. at 2].

This matter is now ripe for adjudication.

**II. STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

3

Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.[1]

Plaintiff is a prisoner of the State of North Carolina and was incarcerated at Marion at the relevant times. Between January 2014 and the date of the incident, Plaintiff had accumulated nearly 60 infraction charges. [Doc. 40-2]. Defendant Moody is and was a Licensed Nurse Practitioner ("LPN") employed by the North Carolina Department of Public Safety and working at Marion. Defendant has worked for the NCDPS since 2000. [Doc. 40-3 at ¶ 2: Moody Dec.].

---

[1] There are material discrepancies in and between Plaintiff's own factual allegations and his summary judgment evidence, which the Court will note as relevant and appropriate. Also, Plaintiff contends that video evidence supports his remaining claim [Doc. 1 at 4, 9; Doc. 42 at 1-3], but he fails to include such evidence in his forecast of evidence before the Court now and no dispute over this evidence was brought before the Court.

4

As an LPN, Defendant is supervised by a Registered Nurse and assists doctors, other nurses, and NCDPS staff in treating offenders and staff. [Id. at ¶ 4]. Defendant Moody does not, however, diagnose anyone. [Id.].

On December 25, 2019, between 6:00 p.m. and 7:00 p.m., Defendant Schetter was escorting Plaintiff to the shower. [Doc. 1 at 3]. Because Plaintiff was in the Restrictive Housing Unit, he was handcuffed from behind at this time. [Id.]. Halfway to the shower, Schetter ordered Plaintiff, who was walking at a moderate pace, to slow down. [Id.]. Plaintiff replied that he was walking at a normal pace. [Id.]. Then Plaintiff stopped walking "so that [he] wouldn't be seen as not complying." [Id.]. Schetter then told Plaintiff that his shower had been revoked and ordered Plaintiff to walk to his cell. Plaintiff persisted in pleading case, asking why his shower had been denied. [Id.]. Schetter, while gripping Plaintiff's arm, threw Plaintiff face first into a nearby wall and then slammed Plaintiff to the floor. [Id.]. Schetter then picked Plaintiff up off the floor and walked him to his cell. [Id. at 4]. Plaintiff suffered a swollen lip, bleeding from his mouth, and swelling to his head. [Id. at 3]. Plaintiff claims that he "never showed any sign of aggression, nor did [he pose] any type of threat." [Id. at 4]. The Incident Report reflects a different version of these events, which was reportedly supported by video evidence. [See Doc. 42-1 at 2-3]. The investigator of the incident concluded that Plaintiff "was clearly resisting staff's orders and escort. Officer Schetter used a reasonable amount of force to gain compliance to his orders and to avoid a possible assault by an agitated offender." [Id. at 3]. Plaintiff was charged with disobeying an order because of the incident. [Id.; Doc. 40-2 at 1].

Defendant Moody, an LPN, arrived at Plaintiff's cell shortly after the use of force to examine Plaintiff. [Doc. 1 at 4]. Plaintiff told Defendant Moody about his injuries and Defendant Moody noted a small laceration to the bottom corner of Plaintiff's mouth and no

5

active bleeding or swelling at that time. [Id.; Doc. 40-3 at 5]. Plaintiff ranked his pain as a 4 out of 10. [Doc. 40-3 at 5]. Defendant Moody "told officers to get [Plaintiff] an icepack" and instructed Plaintiff to follow-up with a sick call as needed and left.[2] [Doc. 1 at 4; Doc. 40-3 at 8]. No one brought Plaintiff an ice pack and he was "left to suffer in pain." [Doc. 1 at 4]. Overnight Plaintiff's swelling increased and caused severe migraines. [Id. at 5]. At 6:29 a.m. the next day, Nurse Alana Howard brought Plaintiff an ice pack according to Defendant Moody's instructions, but Plaintiff refused it. [Doc. 40-3 at 10]. Plaintiff had difficulty eating over the next week and a half and was in pain for 14 days. [Id.; Doc. 1 at 5].

On December 26, 2019, at approximately 3:00 p.m., Plaintiff declared a medical emergency. [Doc. 1 at 5]. Plaintiff alleged in his Complaint that Defendant Moody responded to the emergency and that Plaintiff told Moody that Plaintiff had a severe migraine and that his swelling had increased. [Id.]. Plaintiff further alleged that Moody replied that Plaintiff's injuries "must not be crucial" if Plaintiff was still able to talk, then left without treating Plaintiff's injuries. [Id.]. In the grievance Plaintiff submitted the same day, however, Plaintiff told a different story. [See Doc. 1-2 at 3]. Plaintiff complained, among other things, as follows:

> On Dec. 26th at approximately 3:09 PM Officer Clark refused [his] declarance of a medical emergency, I have several witnesses as well. And last night, when Nurse Moody's remedy for me was an ice pack to reduce swelling, Officer Tyler then declined his offer and took the initiative to go and get ice for me, and she lied and never returned with an ice pack.

[Doc. 1-2 at 4 (errors uncorrected)]. As such, Plaintiff's grievance, which was written the same day as Defendant Moody's alleged refusal of medical care, directly contradicts key facts of

---

[2] In his summary judgment affidavit, on the other hand, Plaintiff attests that "Defendant Michael Moody never gave Plaintiff any medical treatment nor advisory to such whatsoever after acknowledging Plaintiff's injuries[.]" Plaintiff further attests that Defendant "entered false statements" of having ordered Plaintiff an ice pack with instructions to follow-up at sick call as needed. [Doc. 42 at 1].

6

Plaintiff's claim against Defendant Moody. That is, it was Officer Clark, not Defendant Moody, who refused Plaintiff's medical emergency declaration on the afternoon of December 26, 2019. Plaintiff's grievance also conflicts with his testimony that Defendant Moody did nothing to treat Plaintiff's injuries and that Moody entered false statements in Plaintiff's medical record.

Defendant Moody's forecast of evidence corroborates Plaintiff's grievance complaint. Defendant Moody attests that there is no medical record indicating that Plaintiff declared a medical emergency on December 26, 2019, only that Plaintiff refused an ice pack at 6:29 a.m. that morning. After Plaintiff refused the ice pack, no one in medical, including Defendant Moody, had further contact with Plaintiff that day. Moreover, Defendant Moody attests that he never refused Plaintiff treatment or left him to suffer and that he, Moody, never had an encounter with Plaintiff in which Plaintiff complained of a severe migraine and swelling. [Doc. 40-3 at ¶¶ 8-9]. The forecast of evidence does not show that Plaintiff sought any further medical treatment for his alleged injuries after December 26, 2019.

## IV. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent,

7

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. 825, 837 (1994). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

Plaintiff has not raised a genuine issue for trial here. Plaintiff's story changed considerably between his grievance immediately following the incident, his sworn Complaint, and his sworn summary judgment testimony. Plaintiff originally alleged that Defendant Moody told officers to get Plaintiff an ice pack and that no one ever brought him one, but now claims that Defendant Moody did nothing to treat his injuries and lied in Plaintiffs medical record. In his grievance, Plaintiff stated that Officer Clark refused his medical emergency the day after the incident and makes no mention of Defendant Moody. Then, in his Complaint, Plaintiff alleged

that Defendant Moody responded to his medical emergency and refused treatment. Plaintiff's evidence is so unreliable and contradictory that no reasonable jury could believe Plaintiff's version of events, whatever that may be. The Court, therefore, cannot adopt Plaintiff's version of events here. See Scott, 550 U.S. at 380. At best, the acceptable forecast of evidence shows that Defendant Moody examined Plaintiff after the use of force incident, noted his injuries, ordered an ice pack for Plaintiff, and left, having no further involvement with Plaintiff's injuries. The forecast of evidence does not show that Defendant Moody consciously disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Rather, it shows that Defendant Moody acted appropriately under the circumstances. As such, Plaintiff has failed to raise a genuine issue of material fact for trial against Defendant. Summary judgment is, therefore, appropriate.

Additionally, Defendant Moody is entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because Plaintiff has failed to forecast sufficient evidence that Defendant's conduct violated any constitutional right, he is entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

## V. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendant Moody.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 39] is **GRANTED** and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Arbitration and Award [Doc. 44] is **DENIED** as moot.

The Clerk is respectfully instructed to terminate this action.

Signed: August 25, 2022

Graham C. Mullen
United States District Judge